### STODDARD *v.* GIASSON.

TOWNSHIP OFFICERS — COMMISSIONER OF HIGHWAYS — TOWNSHIP CLERK—REFUSAL TO COUNTERSIGN ORDERS—CUSTOM—MANDAMUS.

3 How. Stat. § 1415, provides that, on the performance of contracts, the commissioner of highways shall make payment therefor by orders upon the township treasurer, which shall be signed by such commissioner and countersigned by the township clerk.   Section 1425 provides that the township clerk shall be the clerk of the commissioner of highways, and shall, under his direction, record his proceedings in a suitable book, and shall keep an accurate account of all orders drawn by the commissioner on the township treasurer.   The section further provides that all books and papers relating to the business of the commissioner shall be preserved by the clerk in his office.  *Held*, that *mandamus* would lie on the relation of the commissioner to compel the clerk to countersign orders drawn upon blanks of a stub book kept in the commissioner's possession, where refusal was based solely on a custom in the particular township of drawing such orders on a stub book kept by the clerk.

*Certiorari* to Wayne; Carpenter, J.    Submitted March 14, 1899.    Decided April 25, 1899.

*Mandamus* by Harry C. Stoddard, commissioner of highways for the township of Ecorse, to compel George F. Giasson, clerk of said township, to countersign certain orders on the township treasurer.    From an order granting the writ, respondent brings *certiorari*.    Affirmed.

*James H. Pound*, for relator.

*Allan H. Frazer* (*Ormond F. Hunt*, of counsel), for respondent.

PER CURIAM. The facts in this case are sufficiently stated in the opinion of the learned circuit judge. The facts and the law are so well stated in that opinion that we adopt it as our own:

"Relator, commissioner of highways for the township of Ecorse, applies for a *mandamus* to compel the respondent, clerk of said township, to countersign certain orders on the township treasurer. These orders were drawn by relator upon blanks taken from a book in his possession, containing stubs upon which he describes the order. Respondent contends that the orders should be drawn upon blanks on a stub book kept by him, and that the orders and the stub should be in the same handwriting, according to a custom which has prevailed several years in the township of Ecorse. This is the only question, as it is conceded that the accounts for which the orders are issued are valid, and according to one method or the other the orders should be drawn.

"The law which provides for these orders is contained in section 1415, 3 How. Stat. I quote from that section:

"'Upon the performance of contracts, * * * the commissioner of highways shall make payment therefor by orders upon the township treasurer, which orders shall be signed by such commissioner and countersigned by the township clerk.'

"Section 1425, 3 How. Stat., provides:

"'The township clerk shall be the clerk of the commissioner of highways, and shall, under his direction, record his proceedings in a suitable book, * * * and shall keep an accurate account of all orders drawn by the commissioner on the township treasurer, stating the amount of each, and in whose favor the same were drawn; and all books and papers relating to the business of the commissioner shall be preserved and kept by the clerk in his office.'

"This language clearly indicates that the commissioner shall make the order, and that the clerk shall countersign it. The statute says the commissioner 'shall make payment therefor by orders upon the township treasurer.' The clerk 'shall keep an accurate account of all orders drawn by the commissioner on the township treasurer.' The law gives relator the right to draw these orders, and to no one else the right to control his discretion as to when and where he will draw them. According to respondent's contention, relator can only make this order in his presence,

and on a blank taken from a book in his custody. This gives the respondent the right to control relator's discretion as to when and where the orders shall be issued. Respondent contends that either relator must fill out both these orders and the stub in the book in his custody, which constitutes respondent's account of the order, or that the respondent shall fill out both. If relator must fill out both the order and the stub, he is compelled to perform the duty of keeping an account of these orders, which duty is imposed by law upon respondent. If relator must permit respondent to fill out both the order and the stub, he is prevented from performing the duty which the law says he shall perform.

"To uphold relator's contention does not, as contended by respondent's counsel, adjudge that the custom heretofore followed in Ecorse township was illegal or improper. Heretofore the commissioner has met with the clerk, and permitted him to fill out both the order and the stub in the book in the clerk's custody. I have no doubt of the legality and entire propriety of that method. That was a method which the commissioner had a right to follow, but it seems to me equally clear that he has a right to change it, and adopt another.

"It is contended by the respondent that his duty to keep an accurate account of the orders drawn by relator, and his duty to preserve the books and papers relating to relator's business, justifies him in refusing to countersign orders not taken from the books in his custody. I cannot agree with this contention. Respondent's duty to preserve the books and papers relating to relator's business surely does not deprive relator of the right to keep for his own protection books relating to that business. This is what relator does, and all he does, when he preserves on the stub of the order a description of the order issued by him. Respondent should be afforded the opportunity of knowing whether it is proper for him to sign the order, and of keeping an accurate account of it; but this can be done, and, in my opinion, must be done, without interfering with the legal rights of the relator. When the order in the relator's handwriting is presented to the respondent, he can keep an accurate account of it by filling out a stub in his book, so arranged as to correspond, or by any other proper system of bookkeeping.

"It is argued that, if the order and the stub are made in the same handwriting, a better opportunity is thereby

afforded to detect any change made in the order after the clerk countersigns it. This may be true, but the argument of the relator's counsel that the proposed system, with stubs kept by both relator and respondent, affords less opportunity for a corrupt manipulation of these orders than the system heretofore in use in Ecorse, is at least worthy of consideration. If the respondent thinks that other precautions should be adopted to protect the public treasury against the danger of these orders being raised after they pass from his hands, he can at once place in the hands of the township treasurer a copy of his record of the orders. It is sufficient to say upon this subject that the law determines what safeguards must be observed. The question upon which the decision of this case turns is not, Is the relator's method safer than the one heretofore used? The decision turns upon this question: Has relator a legal right to draw the orders in the method he has chosen? If he has, a court cannot deny that right because, in its opinion, another method is better and safer. As, in my judgment, relator has a right to draw the orders in the method chosen by him, he is entitled to a *mandamus* compelling respondent clerk to countersign them. Respondent must, however, be given an opportunity to make an accurate account of such orders. As respondent refused to countersign these orders in the *bona fide* belief that he would thereby violate an official duty, no costs will be awarded against him."

The judgment is affirmed, without costs.